UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

JERRY BOWEN,
CDCR # BW5375,

Plaintiff,

vs.

CDCR PODIATRIST; DR. CORLEONE; JEFF MACOMBER; C/O SAUCEDO; LT. HUSS; CDCR; NURSE PAK,

Defendants.

Case No.: 25cv3749-LL-MSB

**ORDER DISMISSING SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915A(b)**

[ECF No. 7]

Plaintiff Jerry Bowen, currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") and proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, and paid the $405 filing fee. *See* ECF Nos. 1, 4. Prior to the Court screening the initial Complaint, Petitioner subsequently filed a First Amended Complaint ("FAC"), in which Plaintiff alleged Defendants violated his federal constitutional rights and his rights under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"). *See* ECF No. 5. On June 4, 2026, the Court screened and dismissed the FAC for failure to state a claim pursuant to 28 U.S.C. §1915A(b), notified Plaintiff of the deficiencies of his pleading, and granted leave to amend. ECF No. 6. On July 27, 2026, Plaintiff filed a Second Amended Complaint ("SAC") [ECF No. 7], again alleging

Defendants violated his federal constitutional rights and his rights under the ADA and Section 504 of the RA and now also alleging a state law wrongful death claim. ECF No. 7.

## I. SUA SPONTE SCREENING PURSUANT TO 28 U.S.C. § 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner, his Second Amended Complaint requires pre-Answer screening pursuant to 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915A(a) ("The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."). The Court must sua sponte dismiss a prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Allegations in the SAC

Plaintiff alleges he is an "ADA protected inmate with a disability of severe diabetes requiring insulin." ECF No. 7 at 4. Plaintiff asserts that "[w]hen [Plaintiff] was assaulted by Correctional Officer Saucedo during a serious diabetic episode he was discriminated against because of [h]is disability" and further alleges "CDCR never properly trained its

officers to know the difference between an altered drug state and a serious low blood sugar state of diabetic shock or d[i]abetic emergencies." *Id.* Plaintiff alleges he was "restrained and held down and also blamed for assaulting C/O Saucedo during his diabetic emergency" arising from low blood sugar levels, and after which he was charged with assaulting staff and was subsequently placed in the Restricted Housing Unit ("RHU"). *Id.* He claims Huss, who was also not properly trained and is also responsible for his RHU placement, "threatened [Plaintiff] by saying 'If you kick me, you won't kick nobody else.'" *Id.*

Separately, Plaintiff alleges that around May 2025, he was provided with foot care by CDCR Podiatrist "which wounded the toe[]nail [] so badly it got infected" and "the toe[]nail came off about a week later with puss coming out from the injury." *Id.* at 5. Plaintiff thereafter went to see Dr. Corleone "for a procedure to remove the dead skin from the infection but [e]nded up cutting too deep and caused a serious wound which got worse." *Id.* Plaintiff alleges he needed "wound care and treatment" for the resultant infection "which Nurse Pak refused to give him knowing he needed it," and asserts "[a]ll three medical staff were deliberately indifferent to the harm it would cause [Plaintiff] which ultimately caused [h]is death and after being revived caused psychological harm and em[o]tional distress." *Id.* Plaintiff claims that "the chain of events ultimately le[]d to [Plaintiff] becoming deceased during the amputation of his foot." *Id.* at 6.

**C. <u>Discussion</u>**

Plaintiff seeks to proceed against Defendants CDCR Podiatrist, Corleone, Saucedo, Huss, and Pak in their individual capacities, Defendant Macomber in his individual and official capacities and against Defendant CDCR in its official capacity. *See* ECF No. 7 at 2–3. Plaintiff alleges violations of the ADA and Section 504 of the RA, deliberate indifference arising from a denial of medical care in violation of the Eighth Amendment and wrongful death under California Code of Civil Procedure section 377.60. *Id.* at 4–6. Plaintiff also alleges he was punished in a discriminatory manner due to his disability and placed in the RHU, which the Court liberally construes as raising a due process and equal protection claim under the Fourteenth Amendment. *Id.* at 4. Plaintiff seeks a trial by jury,

an injunction preventing Defendants from "acts of reprisal" and monetary damages totaling $10 million. *Id.* at 8.

**1. ADA and Section 504 of the RA**

Plaintiff alleges Defendant "CDCR is responsible" for the ADA and RA violations because "it failed to train these officers to deal with ADA protected individuals" and specifically asserts that "CDCR never properly trained its officers to know the difference between an altered drug state and a serious low blood sugar state of diabetic shock or d[i]abetic emergencies." ECF No. 7 at 4. Plaintiff alleges that due to these failures, he was assaulted by Defendant Saucedo during his diabetic episode incident, and specifically, he was restrained, held down, blamed for and charged with assaulting Saucedo, and was subsequently placed in RHU by both Saucedo and Huss. *Id.*

While Plaintiff may pursue his ADA and RA claims for damages against CDCR for the reasons discussed in the prior dismissal order, *see* ECF No. 6 at 5 (citing *United States v. Georgia*, 546 U.S. 151, 154 (2006)), and may also proceed against Defendant Macomber in his official capacity as to these claims for the reasons previously discussed, *see id.* (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) and *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1188 (9th Cir. 2003)), for the reasons previously noted, to the extent Plaintiff seeks to proceed against any Defendants in their individual capacities as to his ADA and/or RA claims, he may not do so. *See id.* at 5 n. 2 (citing *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) and *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002)).

As Plaintiff was also instructed in the prior dismissal order, *see* ECF No. 6 at 6, to state a claim under the ADA and/or RA, which again are subject to the same analysis given the lack of substantial difference between the requisite standards, *see id.* (citing *Zukle v. Regents of University of California*, 166 F.3d 1041, 1045 n.22 (9th Cir. 1999) (citations omitted)), Plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs,

> or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of (his) disability.'

*O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (citations omitted); *see also Lovell*, 303 F.3d at 1052 (outlining elements to state a claim under Section 504 of the RA).

Plaintiff asserts in the SAC that he is an "ADA protected inmate with a disability of severe diabetes requiring insulin," ECF No. 7 at 4, but even were the Court to again assume without deciding that Plaintiff's diabetes is a qualifying disability, *see* ECF No. 6 at 6, he again fails to satisfy the remainder of the required elements to state a claim for relief under the ADA or RA and has not cured that defect of pleading identified in the prior order. *See id.* at 7. This is because Plaintiff again fails to plausibly allege he was excluded from participation, denied any benefits, or was discriminated against by Defendants *by reason of his disability*. *See O'Guinn*, 502 F.3d at 1060; *Lovell*, 303 F.3d at 1052. Instead, Plaintiff alleges that Saucedo's and Huss's actions against him were attributable to CDCR's failure to train and resulted in Defendants' inability to distinguish "between an altered drug state and a serious low blood sugar state of diabetic shock or d[i]abetic emergencies." ECF No. 7 at 4. Thus, while Plaintiff offers a conclusory contention that he "was discriminated against due to his disability because CDCR did not have proper d[i]abetic emergency traini[n]g in place," *id.*, Plaintiff asserts the contested actions were taken because his disability was erroneously *not recognized,* rather than alleging the actions were taken *by reason of* his disability. In any event, Plaintiff fails to assert facts which plausibly allege his subsequent placement or segregation in RHU was done because of his disability rather than due to the aforementioned incident and again fails to identify what programs, if any, he was "otherwise qualified to participate in or receive the benefit of" which he was excluded from or denied participation in *due to his disability*. *O'Guinn*, 502 F.3d at 1060 (citations omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Finally, to the extent Plaintiff again generally alleges in the SAC that he was "deprived access to a medical service or a medical program" during his diabetic emergency, ECF No. 7 at 4, he also does not state a claim for relief under the ADA or RA. As Plaintiff was instructed, *see* ECF No. 6 at 6–7, this is because "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability," and Plaintiff has not cured this defect of pleading. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice." (citation omitted)), *overruled in part on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Nguon v. Glynn,* Case No. 21-cv-2113-CAB-JLB, 2022 WL 1085606, at *8 (S.D. Cal. Apr. 11, 2022) ("Plaintiff's allegations of disagreement with his medical treatment and discontinuation of his medication, although potentially cognizable under the Eighth Amendment, are unlikely to state an ADA claim simply by being recast as an ADA claim." (citations omitted)).

Accordingly, Plaintiff's ADA and RA claims are dismissed sua sponte pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim. Because it is now clear he is unable to cure the identified pleading defects, Plaintiff's ADA and RA claims are dismissed against all Defendants without further leave to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))); *U.S. ex rel. Insoon Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("Futility of amendment can, by itself, justify the denial of . . . leave to amend.").

**2. 42 U.S.C. § 1983**

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of

the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

Plaintiff alleges Defendants CDCR Podiatrist, Dr. Corleone, and Nurse Pak provided inadequate treatment and or/refused to render necessary medical treatment and asserts "[a]ll three medical staff were deliberately indifferent to the harm it would cause [Plaintiff] which ultimately caused [h]is death and after being revived caused psychological harm and em[o]tional distress" in violation of the Eighth Amendment. ECF No. 7 at 5. He also alleges CDCR failed to train staff to recognize and deal with diabetic patients. *Id.* at 4.

**a. Eighth Amendment- Denial of and/or Inadequate Medical Care**

Plaintiff alleges CDCR Podiatrist, Dr. Corleone, and Nurse Pak failed to provide him with proper medical care in violation of the Eighth Amendment. ECF No. 7 at 5.

As the Court instructed in the prior dismissal order, *see* ECF No. 6 at 8–9, "[i]n order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id.* (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)); *see Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) ("[T]he plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'") (citations and some internal quotation marks omitted). "[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, Plaintiff must allege the prison official had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302–03). A prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Court again finds Plaintiff sufficiently alleges a "serious medical need" arising from his foot wound and infection given his status as a diabetic. *See* ECF No. 7 at 5; *see* ECF No. 6 at 9 (citing *Lolli v. County of Orange*, 351 F.3d 410, 420 (9th Cir. 2003) ("[A] constitutional violation may take place when the government does not respond to the legitimate medical needs of a detainee whom it has reason to believe is diabetic." (citations omitted))). But Plaintiff again fails to assert sufficient *facts*, as opposed to conclusory contentions, which plausibly allege any Defendant was deliberately indifferent to that need.

Here, Plaintiff alleges CDCR Podiatrist treated him for foot care in May 2025, and during that treatment "wounded the toe[]nail of [Plaintiff] so badly it got infected" after which his "toe[]nail came off about a week later with puss coming out of the injury." ECF No. 7 at 5. Plaintiff thereafter saw Dr. Corleone "for a procedure to remove the dead skin from the infection but [e]nded up cutting too deep and caused a serious wound which got worse," and claims "[t]he infection was so bad [Plaintiff] needed wound care and treatment which Nurse Pak refused to give him knowing he needed it." *Id.*

First, with respect to CDCR Podiatrist and Dr. Corleone, the Court previously instructed Plaintiff that his allegations in the FAC, in which he claimed CDCR Podiatrist "created a deep wound during foot care," resulting in an infection which required Dr. Corleone to perform an additional procedure, during which Dr. Corleone then "cut too deep" during that procedure and spread the infection, *see* ECF No. 6 at 9 (quoting ECF No. 5 at 5), "allege[d] at most negligence or malpractice in these Defendants' actions in treating his foot, neither of which states a claim of inadequate medical care under the Eighth Amendment." ECF No. 6 at 9–10 (citing *Gamble*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")). Plaintiff's nearly identical contentions in the SAC, *see* ECF No. 7 at 5, do not cure the

previously identified defects of pleading and thus again fail to state a claim under the Eighth Amendment against either CDCR Podiatrist or Dr. Corleone for the reasons previously stated.

Second, somewhat in contrast to Plaintiff's prior assertion that Nurse Pak "refused to provide adequate wound care," ECF No. 5 at 5, Plaintiff now appears to claim in the SAC that Pak refused to provide *any* wound care, asserting: "The infection was so bad [Plaintiff] needed wound care and treatment which Nurse Pak refused to give him knowing he needed it." ECF No. 7 at 5. However, Plaintiff's contentions in this regard are conclusory, as he fails to articulate facts identifying the purported source of Pak's alleged knowledge that he needed unspecified "wound care and treatment," for instance, if Nurse Pak was directed to provide wound care by a treating physician and failed to do so. Instead, as pled in the SAC, it is unclear whether Plaintiff could conceivably state a claim of deliberate indifference against Pak arising from a *purposeful* act or failure, or whether his claim perhaps instead stems from a difference of opinion between Pak and Plaintiff as to the appropriate measure of care, the latter of which the Court previously concluded failed to state a claim in the FAC. *See* ECF No. 6 at 10 (citing *Colwell*, 763 F.3d at 1068 ("A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." (quotation marks and citation omitted); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("[A] difference of medical opinion . . . cannot support a claim of deliberate indifference.")). As Plaintiff was previously instructed, *see* ECF No. 6 at 10–11, "to show deliberate indifference, a plaintiff must allege both "(a) a *purposeful* act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted) (emphasis added).

Moreover, Plaintiff was previously advised that he also did not state an Eighth Amendment claim in the FAC because he "failed to plead facts plausibly alleging how any Defendants' actions were 'medically unacceptable' such that Plaintiff could potentially state a claim of deliberate indifference." ECF No. 6 at 11 (citing *Toguchi*, 391 F.3d at 1058

(finding a claim of deliberate indifference can be sustained in a situation where "the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health." (alteration in original) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), overruled in part on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc))); *accord Gordon v. County of Orange*, 6 F.4th 961, 970 (9th Cir. 2021)).

Upon review, Plaintiff has not cured that deficiency of pleading in the SAC, as he proffers only generalized allegations of Defendants' failure to adhere to unspecified policies or guidelines, including claiming CDCR Podiatrist "failed to follow the safety measure of caring for diabetic patien[t]s doing foot care" or "provide a safe procedure" and claiming Dr. Corleone similarly "refused to follow the guidel[]ines of foot care to diabetic patients." ECF No. 7 at 5. Plaintiff's vague and conclusory allegation that "[t]he podiatrist, Dr. Corleone, and Nurse Pak were all deliberately indifferent to [his] need for refusing to give [him] the medical care he needed," *id.*, without more, is not sufficient. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). If Plaintiff wishes to proceed with an Eighth Amendment claim against these Defendants, he must set forth *factual allegations* which plausibly allege they knew he had a serious medical need for treatment, and knowing of that need, deliberately refused treatment and/or rendered medically unacceptable treatment.

Thus, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against any Defendant and, as such, the claim is dismissed sua sponte pursuant to 28 U.S.C. § 1915A(b) with leave to amend.

**b. Fourteenth Amendment**

Plaintiff again alleges that he was discriminated against because of his disability, placed in the RHU by Defendants Saucedo and Huss and was subsequently "deprived of access to a medical service or medical program." ECF No. 7 at 4. To the extent this contention could again be liberally construed as again raising a due process and equal

protection claim under the Fourteenth Amendment despite Plaintiff's failure to enumerate any such claim in the SAC, *see* ECF No. 7 *generally*, Plaintiff fails to state a claim for the reasons stated in the Court's prior dismissal order.[1] *See* ECF No. 6 at 13–15.

With respect to the due process aspect of this claim—the portion of Plaintiff's complaint arising from his placement in the RHU and alleging that due to such placement he was subsequently deprived of access to unspecified medical services or programming—*see* ECF No. 7 at 4, it fails to state a Fourteenth Amendment due process claim. *See Sandin v. Conner*, 515 U.S. 472, 480 (1995) ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" (additional citations and quotation marks omitted)); *Neal v. Shimoda*, 131 F.3d 818, 828 (9th Cir. 1997) ("[A] prisoner does not have a constitutional right . . . to receive a particular security classification." (citing *Moody v. Daggett*, 429 U.S. 78, 87 n.9 (1976))).

Plaintiff also fails to plausibly state a Fourteenth Amendment equal protection claim for the reasons stated in the prior dismissal order, *see* ECF No. 6 at 14 (citing *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) ("To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class.")), namely because Plaintiff does not allege that he is a member of a "protected class" as relevant to this analysis, *see Serrano*, 345 F.3d at 1082, given "[t]he physically disabled are not a protected class for purposes of equal protection under the Fourteenth Amendment." *Gamble v. City of Escondido*, 104 F.3d 300, 307 (9th Cir. 1997) (citing *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 446 (1985)). Nor are Plaintiff's vague and conclusory allegations that "he was discriminated against because of [h]is disability," ECF No. 7 at 4, in any way sufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

---

[1] *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (quoting *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam))).

Accordingly, Plaintiff's Fourteenth Amendment due process and equal protection claim is dismissed sua sponte pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim. Further, because it is now clear Plaintiff is unable to cure the identified pleading defects, his Fourteenth Amendment claims are dismissed against all Defendants without further leave to amend. *See Rosati*, 791 F.3d at 1039; *Lee*, 245 F.3d at 1052 ("Futility of amendment can, by itself, justify the denial of . . . leave to amend.").

**c. Supervisory Liability**

It appears Plaintiff again seeks in the SAC to hold liable Defendant Macomber in his individual and official capacities and Defendant CDCR in its official capacity for their alleged failures in supervising and/or training the other Defendants. *See* ECF No. 7 at 2–4, 6. However, for the reasons discussed in the prior dismissal order, *see* ECF No. 6 at 15, (citing *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999); *Aholelei v. Department of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007)), Plaintiff may not proceed with a claim for damages against either Macomber or CDCR in their official capacities. *See also id.* (citing *Dittman*, 191 F.3d at 1025–26; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)). Accordingly, the Court dismisses CDCR and Macomber to the extent Plaintiff seeks damages from them in their official capacities as to his Eighth and Fourteenth Amendment claims.

Plaintiff alleges "CDCR never properly trained its officers to know the difference between an altered drug state and a serious low blood sugar state of diabetic shock or d[i]abetic emergencies," ECF No. 7 at 4, but to the extent Plaintiff again also seeks to hold Defendant Macomber liable in his individual capacity for any failure to train and/or supervise the other Defendants, he again fails to state a claim for relief.

As the Court noted in the prior dismissal order, *see* ECF No. 6 at 16, "[a] supervisory official may be held liable under § 1983 only if 'there exists either (1) his or her personal involvement in the constitutional violation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation,'" *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir.

2011)). Here, Plaintiff again fails to set forth facts which plausibly allege Defendant Macomber had any *actual* knowledge of the specific failures Plaintiff complains of and instead only generally asserts CDCR "never properly trained its officers" and "did not have proper diabetic emergency traini[n]g in place" and "failed to train these officers to deal with ADA protected individuals." ECF No. 7 at 4. Plaintiff again fails to plead specific factual allegations concerning any actual action or inaction by Macomber as to his Eighth or Fourteenth Amendment claims nor does Plaintiff allege a constitutional violation *caused* by Macomber's action or lack of action and thus, any allegation in this regard fails for the same reasons articulated in the prior dismissal order. *See* ECF No. 6 at 16 (citing *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.")); *see also Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) ("In a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." (internal quotation marks and citation omitted). Plaintiff's conclusory contentions are again insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

Thus, Macomber must be again dismissed from this action and because it is now clear Plaintiff is unable to cure the identified pleading defects, the dismissal is without further leave to amend. *See Rosati*, 791 F.3d at 1039; *Lee*, 245 F.3d at 1052.

### 3. State Law Wrongful Death Claim

Finally, Plaintiff raises a claim under California Code of Civil Procedure section 377.60 alleging his own wrongful death and "request[s] that this Court allow him to proceed on this wrongful death claim due to the fact that the Defendants CDCR, Jeff Macomber and Nurse Pak, Dr. Corleone, [and] CDCR Podiatrist all contributed to the chain of events that ultimately le[]d to [Plaintiff] becoming deceased during the amputation of his foot due to their deliberate indifference." ECF No. 7 at 1, 6.

/ / /

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, because the Court has dismissed all of Plaintiff's federal claims from the instant civil action, the Court declines to exercise supplemental jurisdiction over this state law claim.[2] *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if– . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . .").

## II. CONCLUSION AND ORDER

For the reasons discussed above, the Court **DISMISSES** Plaintiff's Second Amended Complaint in its entirety for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff's ADA/RA claim, Fourteenth Amendment claim, and his supervisory liability contentions are dismissed *without further leave to amend*. The Court **GRANTS** Plaintiff leave to file a Third Amended Complaint, on or before **November 23, 2026**, which cures all the deficiencies of pleading noted ***as to his Eighth Amendment claim alone***. Plaintiff's Third Amended Complaint must be

---

[2] Separately, the Court notes that while Plaintiff seeks to bring a wrongful death claim for *his own death*, Plaintiff acknowledges that he was thereafter "revived," and is thus *not* presently deceased. *See* ECF No. 7 at 5. It also appears Plaintiff, who seeks to bring a wrongful death claim based on his *own* non-permanent "death," may lack standing to bring this claim on his own behalf. *See* Cal. Civ. Proc. § 377.60 ("A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession. If the parents of the decedent would be entitled to bring an action under this subdivision, and the parents are deceased, then the legal guardians of the decedent, if any, may bring an action under this subdivision as if they were the decedent's parents.").

complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Third Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (claims which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file a Third Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1) and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: October 9, 2026

Honorable Linda Lopez
United States District Judge